IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **ADVANCE SERVICES, INC.,** | ) | **CASE NO.   8:03CV108** |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM AND ORDER** |
| **CANDLEWOOD SHELLS, LLC;** | ) | **DENYING DEFENDANTS' MOTION** |
| **HUNTER WISE FINANCIAL GROUP,** | ) | **TO DISMISS FRAUD CLAIM** |
| **LLC; SKY, LLC; WHITE HAT FOOD &** | ) | |
| **BEVERAGE GROUP, LLC; GARY L.** | ) | |
| **PRYOR, AND FRANK PATTON,** | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on the Motion to Dismiss filed by Defendants Candlewood Shells, LLC, Hunter Wise Financial Group, LLC, ("Hunter Wise"), Sky, LLC., White Hat Food & Beverage Group, LLC., Gary F. Pryor, and Frank Patton (hereafter collectively the "Defendants")[1]. The Defendants seek dismissal of Count III of the First Amended Complaint, or, in the alternative, dismissal of Defendant Hunter Wise from Count III. The Defendants argue that the fraud claim alleged in Count III against Defendants Pryor, Patton, and Hunter Wise has no factual basis independent of the breach of contract claim set forth in Count I.

The Plaintiff, Advance Services, Inc. ("ASI"), contends that the fraud claim exists independently of the breach of contract claim, that ASI has set forth specific allegations of fraud with the particularity required of Fed. R. Civ. P. 9(b), and that these allegations are sufficient to state a claim for relief against the Defendants named in Count III. ASI also

---

[1] Defendant Bradley E Kuluris was dismissed by Order dated November 30, 2005 (Filing No. 105).

1

represents that it had intended, throughout its negotiations with Defendants regarding amending the Complaint, to add Hunter Wise as a defendant to Count III. ASI argues that even if there was no mutual understanding between ASI's counsel and the Defendants' counsel regarding the addition of Hunter Wise to Claim III, that amendment should be permitted in the interests of justice.

## BACKGROUND

The number of people and entities involved in the transactions that are the subject of the Amended Complaint make this matter, at first glance, appear to be more complicated than it is. The following summary is based on the allegations in the Amended Complaint. ASI is a Nebraska corporation engaged in the business of providing temporary labor to light industry. Beginning in 2000, ASI provided temporary labor for pizza shell testing and production businesses that operated out of a plant located in McPherson, Kansas. In March of 2000, ASI agreed to provide temporary labor to Heartland Gold Foods LLC, ("Heartland"), in exchange for a sum based on the hourly rate of each temporary worker. At all times relevant, the plant in McPherson was owned by McPherson Production Company, LLC.

In August 2001, Heartland began negotiating with the national pizza chain, Papa John's, for a contract to produce pizza shells. On October 30, 2001, PJ Foods, a subsidiary of Papa John's, deposited $1.5 million in escrow for Heartland, allegedly for the purpose of paying Heartland's vendors. In February 2002, PJ Gold and Heartland executed a document entitled "Binding Letter of Intent," according to which Heartland agreed to produce 500,000 pizza shells in exchange for the payment of $1.5 million by PJ Gold, $814,000 of which had already been paid to Heartland. In July 2002, Defendant

2

Candlewood purchased the pizza shell production business from Heartland.[2] On December 31, 2001, PJ Gold, another subsidiary of Papa John's, contracted with McPherson Production for an option to purchase the McPherson plant where the pizza shells were being produced. PJ Gold's option expired on October 31, 2002. On October 30, 2002, PJ Gold exercised its option to purchase the plant from McPherson Production and set a closing date of December 13, 2002.

While Heartland was negotiating with Papa John's in late 2001, Heartland also began looking for financing from investors. One of those investors was Hunter Wise. In March 2002, Hunter Wise and Heartland were negotiating to purchase the plant in McPherson from PJ Gold, which held the option to purchase the plant from McPherson Production. Those negotiations did not produce a sale. In December 2002, PJ Gold decided not to close on the sale and paid $100,000 to McPherson Production to walk away from the deal. Candlewood was unable to obtain the financing necessary to purchase the McPherson plant, and the plant returned to the control of McPherson Production. On December 13 and 14, 2002, McPherson Production ordered Candlewood out of the plant.

ASI provided temporary labor for the pizza-shell operation continually during the relevant time. In late 2001, Heartland became delinquent on its ASI account. In April 2002, ASI contacted Heartland's Nori Hale to discuss Heartland's overdue balance. Hale told ASI's regional manager, Greg Wagner, that all Heartland invoices were being forwarded to Hunter Wise for payment, and Hale directed Wagner to call Hunter Wise. On

---

[2] Candlewood's only member is White Hat Food & Beverage Group.

April 24, 2002, ASI contacted Tim Riedel, who is identified in the Complaint as a managing director of Hunter Wise.  Riedel informed Wagner that Hunter Wise would release money to cover the overdue invoices.  According to the Complaint, this was the first of several conversations that ASI's representatives had with Hunter Wise's and Candlewood's representatives regarding the overdue balances owed to ASI, and the first of many misrepresentations made by Hunter Wise and Candlewood representatives about impending payments to ASI.  For example, the Amended Complaint alleges that in July 2002, ASI was informed that Candlewood had purchased Heartland and that Candlewood had assumed Heartland's accounts payable; and during a September 11, 2002, meeting, ASI representatives were told by Defendant Frank Patton, another Hunter Wise managing director, that the pizza operation would reach a break-even point soon and payments to ASI then would be made.

In Count I, ASI alleges that on June 18, 2002, Reidel informed ASI that Candlewood had purchased Heartland and assumed the payables owed to ASI, and that, approximately one month later, Riedel told ASI that "all vendor payables will eventually be brought current" by Candlewood.  By these and similar representations, ASI alleges, Candlewood became liable to ASI for the contractual obligations owed to ASI by Heartland.  In addition, in July 2002, Candlewood and ASI executed an agreement whereby ASI agreed to supply temporary labor to Candlewood for a fee, based on the hourly billing rate for each temporary employee provided to Candlewood.  ASI alleges that more than one million dollars is owed to it by Candlewood under this contract. (Amended Complaint at ¶¶ 80-84, 87).

Count II alleges that Defendants White Hat, Sky LLC, Pryor and Patton are liable to ASI as the alter egos of Candlewood. Count III alleges that Defendants Pryor, Patton and Hunter Wise are liable to the Plaintiff based on fraud.

## ANALYSIS

**Jurisdiction and Standard of Review**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the Plaintiff and Defendants, and the amount in controversy exceeds $75,000.

In considering a motion to dismiss a claim under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted, the court must assume all the facts alleged in the complaint are true and must liberally construe the complaint in the light most favorable to the plaintiff. *Schmedding v. Tnemec Co., Inc.*, 187 F.3d 862, 864 (8th Cir.1999). A motion to dismiss a claim under Fed. R. Civ. P. 12(b)(6) should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts which would entitle the plaintiff to relief. *Id.* Thus, dismissal should be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief.

**Conflict of Laws**

The Plaintiff contends that Nebraska law applies to the fraud claim, and the Defendants contend that Kansas law applies. Because the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, the Court will apply the conflicts-of-laws rules of Nebraska, the forum state, to determine the substantive law that applies to the case. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496-97(1941); and *Mertz v.*

*Pharmacists Mut. Ins. Co.*, 625 N.W.2d 197, 202 (Neb. 2001). In Nebraska, "[t]he first step in a conflict-of-law analysis is to determine whether there is an actual conflict between the legal rules of different states. . . . An actual conflict exists when a legal issue is resolved differently under the law of two states." *Johnson v. U.S. Fid. and Guar. Co.*, 696 N.W.2d 431, 436 (Neb. 2005).

Defendants contend that either Kansas law applies and there is either a true conflict because the outcome under Nebraska law is different from the outcome under Kansas law, or, in the event the Court determines that Nebraska law applies, then there is only a false conflict and the claims should still be dismissed.

Nebraska follows the Restatement (Second) of Conflicts of Laws. *Inacom Corp. v. Sears, Roebuck & Co.*, 254 F.3d 683, 687 (8th Cir. 2001). "The rights and liability of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties." Restatement (Second) of Conflict of Laws § 145. The court should consider: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties centered." *Id.*

The parties agree that the analysis centers on the factors set forth in the Restatement (Second) of Conflicts of Laws § 148(2), governing claims of fraud and misrepresentation. That section states:

> (2) When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others,

6

    as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:

    (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,

    (b) the place where the plaintiff received the representations,

    (c) the place where the defendant made the representations,

    (d) the domicile, residence, nationality, place of incorporation and place of business of the parties,

    (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and

    (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

  Both parties place significance on the first factor, the place or places where the Plaintiff acted in reliance upon the Defendants' false representations. ASI contends that the act in reliance was the ASI general manager's decision to continue providing temporary labor at the McPherson plant. ASI claims that those decisions were made by Wagner in Nebraska. The Defendants disagree. Referring to the comments to § 148(2)(a), Defendants contend that the act in reliance was ASI's relinquishment of its assets, that is, the supplying of temporary labor to the plant in Kansas. Defendants argue that this relinquishment of assets occurred in Kansas. I am persuaded by the Defendants' analysis of this issue. I believe that the act taken in reliance was not the making of a decision, but rather the act of supplying temporary labor to the plant in Kansas. *See Atchison Casting Corp. v. Dofasco, Inc.,* 889 F.Supp. 1445, 1455-56 (D.Kan. 1995), *citing Raymark Indus., Inc. v. Stemple*, 714 F.Supp. 460, 464 (D.Kan. 1988). I find the first factor points strongly to Kansas's interest in the matter.

There is little dispute about the second and third factors. ASI states that it received representations while in Nebraska, Arizona, and Kansas. Similarly, ASI has alleged that the misrepresentations were made in Kansas and in Arizona. The Defendants do not dispute these statements, and both parties acknowledge that because the giving and receiving of communications occurred in both Kansas and Nebraska, these factors add little to the analysis and do not favor one state's interest over the other state's interest.

The fourth factor, § 148(2)(a)(d), favors Nebraska. None of the parties is a citizen or resident of Kansas, although ASI, only, is a resident of Nebraska based on its place of incorporation and its principal place of business. I note, however, that "[a] corporation's place of incorporation is less important than other factors." Restatement (Second) of Conflict of Laws § 145, cmt. e; and *see Stoltenberg v. Unum Life Ins. Co.*, WL 2044895, p. 4 (D.Neb. 2005).

The fifth factor weighs in favor of applying Kansas law. This factor requires the Court to consider the place where the "tangible thing which is the subject of the transaction between the parties was situated at the time." ASI contends the fifth fact is irrelevant, but the Defendants argue that this factor addresses the tangible thing that is the temporary labor provided by ASI at the Kansas plant. I agree with ASI that the tangible thing that brought these parties together is temporary labor provided by ASI. That the labor is a service rather than product does not render the factor irrelevant. The labor was the tangible thing, and it was located in Kansas.

The final factor, subsection (f), favors Kansas. ASI concedes that the performance was in Kansas.

Applying all these factors, I find that Kansas law has the most significant relationship to the fraud claim alleged in Count III of the Amended Complaint. I find that the act taken in reliance upon the Defendants' alleged statements was providing temporary labor to the plant in Kansas; that the tangible thing that brought these parties together was the need for temporary labor for the plant in Kansas; and that ASI performed by providing temporary labor in Kansas. The parties were communicating from their principal places of business and from Kansas. I conclude that the balance of these factors overwhelmingly favors the application of Kansas law to the fraud claim.

**Motion to Dismiss Fraud Claim based on Lack of Distinct Damage**

Defendants seek dismissal because they contend that under Kansas law, a claim based on fraud will fail as a matter of law unless the fraud claim is supported by "damages beyond those suffered by breach of contract." *Heller v. Martin*, 782 P.2d 1241, 1246 (Kan. App. 1989). ASI's breach of contract claim, Count I, is against Defendant Candlewood, with which ASI executed the contract. Count II alleges that the other Defendants, with the exception of Hunter Wise, are liable to ASI as alter egos of Candlewood. Count III is the fraud claim that includes allegations of several allegedly false representations made by the Defendants named in Counts I and II, and by representatives of Defendant Hunter Wise. In the Amended Complaint, there are allegations that the Defendants made false representations to ASI regarding the viability of the pizza production business, the status of the plant ownership, and whether and when payments would be made to ASI. The crux of the issue presented by this motion is whether there are damages flowing from the alleged fraud that are distinct from damages ASI sustained as a result of the breach of contract.

"Actionable fraud includes an untrue statement of fact, known to be untrue by the party making it, made with the intent to deceive or recklessly made with disregard for the truth, where another party justifiably relies on the statement and acts to his injury and damage. " *Nordstrom v. Miller*, 605 P.2d 545, 551 - 552 (Kan. 1980). Damages recoverable for breach of contract are limited to those damages which may fairly be considered as arising, in the usual course of things, from the breach, or as may reasonably be assumed to have been within the contemplation of both parties as the probable result of the breach. *Kansas State Bank v. Overseas Motosport, Inc.*, 563 P.2d 414, 415-16 (Kan. 1977). Damages which are not the result of the breach, and those which are remote, cannot serve to support a judgment. *Id.* at 416. Exemplary or punitive damages are not recoverable in the absence of an independent tort. *CIT Group/Sales Financing, Inc. v. E-Z Pay Used Cars, Inc.*, 32 P.3d 1197, 1204 (Kan. App. 2001).

The *Heller* Court held that a breach of contract action cannot be transformed into an action for fraud simply by alleging reliance on representation that contract would be performed, and that independent fraud must cause damages beyond those caused by a breach. *Id.* The Amended Complaint demonstrates that the damages claimed by ASI as a result of Candlewood's breach of contract, from either Candlewood or its alter egos as presented in Claims I and II, are the same damages that ASI seeks from the Defendants named in Count III, with one exception. In all three claims, ASI seeks damages for the amount owed to ASI for the temporary labor supplied ($1,084.612.50), pre-judgment interest, post-judgment interests, and costs; but in Count III, ASI also seeks damages for the fees and costs associated with its litigation against the national pizza chain, Papa

John's, which ASI alleges were caused by the intentional misrepresentations of Pryor, Patton, and Hunter Wise.

I find that there is some undeniable duplication in the damages claimed in Counts I and II when compared to Count III. I also observe that ASI may have significant hurdles to overcome in proving the reasonableness of its reliance on some of the alleged misrepresentations and in proving causation on the distinct damages claimed as a result of the fraud. Nevertheless, ASI's allegations of damage caused by the misrepresentations are sufficient to withstand the Defendants' motion to dismiss. I am not persuaded that the "bargained-for existence of a contractual remedy displaces the imposition of . . . tort duties in this case," at least not in total. *Woodmont Corp. v. Rockwood Center Partnership.*, 852 F. Supp. 948, 956 (D. Kan. 1994) *citing Isler v. Texas Oil & Gas Corp.*, 749 F.2d 22, 24 (10th Cir.1984).

**Addition of Hunter Wise**

Finally, Defendants object to ASI's addition of Defendant Hunter Wise to the fraud claim, Count III. Defendants contend that the addition of Hunter Wise to the fraud claim was not contemplated by them when they agreed to allow ASI to file an amended complaint. It may be that the parties did not reach a mutual understanding regarding the addition of Hunter Wise to the fraud claim. Nevertheless, I find that Hunter Wise can claim no genuine surprise or unfair prejudice in being added to Count III at this time given the allegations against it and its principals in original complaint. For example, fraud is alleged in Counts V and VI of the original complaint, and Pryor, Patton, and others are identified in those Counts as officers of Hunter Wise and other entities involved in this case. The Court has broad discretion to allow amendment to the pleadings, and given the

11

development of this case, I conclude that justice requires the inclusion of Hunter Wise as a defendant in Count III. Fed. R. Civ. P. 15(a); *Bediako v. Stein Mart, Inc.,* 354 F.3d 835, 841 (8th Cir. 2004) (stating "[d]elay alone is not enough to deny a motion to amend; prejudice to the nonmovant must also be shown.")

## CONCLUSION

Because it appears from the allegations in the Amended Complaint that there is a basis for recovery of damages caused by the alleged fraud of Pryor, Patton and Hunter Wise that are distinct form the damages flowing from the alleged breach of contract, the motion to dismiss the fraud claim shall be denied.

IT IS ORDERED:

1. The Defendants' Motion to Dismiss (Filing No. 98) is denied; and
2. The Defendants' Unopposed Motion to Extend Time to File Reply Brief (Filing No. 108) is granted. The reply brief was considered.

DATED this 15th day of February, 2006.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge